UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

**JACOB WINTERS,**

            Plaintiff,

vs.

**STONE TRANSPORT HOLDING, INC.,** and
**STONE TRANSPORTATION HOLDING CO.,**
Jointly and severally,

            Defendants.

Case No.

Hon.

_____/

Jack W. Schulz (P78078)
SCHULZ GOTHAM PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*
_____/

## **COMPLAINT AND DEMAND FOR TRIAL BY JURY**

There is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence.

**NOW COMES** Plaintiff, **JACOB WINTERS**, for his Complaint against Defendants Stone Transport Holding, Inc. and Stone Transportation Holding Co. stating the following:

## **INTRODUCTION**

1. Plaintiff Jacob Winters was dumped from his employment with Stone Transport in complete disregard for his rights pursuant to laws and regulations governing employment during the current Covid-19 declared emergency. Plaintiff, a Breakdown Coordinator, duties were largely limited to fielding phone calls from company truck drivers having issues on the road; a position which could be entirely performed telecommuting. Despite this, Plaintiff was required to work in-person close to coworkers in a tiny room throughout the pandemic.

Around April 18, 2020, both Plaintiff and his girlfriend began running a fever and exhibiting symptoms of Covid-19. Plaintiff notified Defendants of his condition and was not instructed to rest, but instead instructed to work from home until he could produce a doctor note and results demonstrating he tested negative for Covid-19. Plaintiff, a veteran, attempted to obtain a test from several sources including the local VA Hospital. Plaintiff was able to secure a test on April 28, 2020, and informed Defendants. Plaintiff received a verbal notification that his results were negative and informed the Defendants who informed him the result must be in writing. Egregiously, Defendants terminated Plaintiff before his written results were issued telling him to go "have a nice life."

Within this complaint, Plaintiff alleges that he was terminated in violation of his rights afforded under the FMLA and in violation of public policy. Additionally, Defendant required Plaintiff to work an unpaid half hour each shift in violation of the FLSA.

## PARTIES

2. Plaintiff Jacob Winters is an individual who resides in Saginaw County, Michigan.

3. Defendant Stone Transport Holding, Inc. is a domestic profit corporation located in Saginaw, Michigan, Saginaw County. Stone Transport Holding, Inc.'s registered business address is 3495 Hack Rd. Saginaw, MI 48601.

4. Defendant Stone Transportation Holding Co. is a domestic profit corporation located in Saginaw, Michigan, Saginaw County. Stone Transportation Holding Co.'s registered business address is 3495 Hack Rd. Saginaw, MI 48601.

5. At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## JURISDICITON AND VENUE

6. This Court has original jurisdiction under 28 U.S.C. § 1331 because Plaintiff has raised a Federal Claim under the Family Medical Leave Act of 1993.

7. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

8. Plaintiff Jacob Winters ("Plaintiff") began his employment as a Breakdown Coordinator with Defendants Stone Transport Holding, Inc. and Stone

Transportation Holding Co. (collectively "Defendants" or "Stone Transport") in July 2018.

9. Stone Transport is a trucking company involved in transportation, logistics and material handling. Stone Transport employees less than 500 employees.

10. Plaintiff's position, Breakdown Coordinator, involves fielding calls from Defendants drivers who are experiencing issues on the road. These inquires come in the form of phone calls and the duties can be performed through telecommuting.

11. Plaintiff is a veteran. As a result of his military service, Plaintiff is able to receive medical care from the VA hospital system.

Factual Background of the Covid-19 Pandemic and Associated Legal Protections

12. Around early March 2020, America began seeing multiple cases of the novel coronavirus ("COVID-19"). Covid-19 is a respiratory disease that can result in serious illness or death. It is caused by a new strain of coronavirus not previously identified in humans and easily spread from person to person. Older adults and those with chronic health conditions are at particular risk, and there is an increased risk of rapid spread of COVID-19 among persons in close proximity to one another. There is currently no approved vaccine or antiviral treatment for this disease.

13. On March 10, 2020, the Michigan Department of Health and Human Services identified the first two presumptive-positive cases of COVID-19 in Michigan. On that same day, Michigan's Governor Whitmer issued *Executive Order 2020-4*

declaring a state of emergency across the state of Michigan under section 1 of article 5 of the Michigan Constitution of 1963, the Emergency Management Act, 1976 PA 390, as amended, MCL 30.401-.421, and the Emergency Powers of the Governor Act of 1945, 1945 PA 302, as amended, MCL 10.31-.33.

14. On March 18, 2020, President Donald Trump signed the Families First Coronavirus Response Act ("FFCRA") into law. As part of the FFCRA, our government also passed the Emergency Paid Sick Leave Act ("EPSLA") and the Emergency Family and Medical Leave Expansion Act ("EFMLEA")

15. Specifically, the EFMLEA amends the Family Medical Leave Act ("FMLA") by adding another qualifying reason for leave and requiring pay for most of it. It provides up to 12 weeks of leave (two weeks unpaid and ten weeks paid) for "a qualifying need related to a public health emergency" and/or is "experiencing COVID-19 symptoms and is seeking a medical diagnosis." *See FFCRA, Division C, § 3102(b) (Pub. L. No. 116-127); 29 U.S.C. § 2612(a)(1)(F))*

16. Qualifying reasons include the period in which an employee is experiencing COVID-19 symptoms or has been exposed to someone exhibiting symptoms and seeking a medical diagnosis. *See 29 C.F.R. § 826.20*

17. The Department of Labor ("DOL") has ruled Covid-19 related symptoms as experiencing a fever, dry cough, shortness of breath, or shortness of breath; or other symptoms identified by the US Centers for Disease Control and Prevention (CDC).

18. An employee returning from FFCRA paid sick leave or family leave has the right to be restored to the same or an equivalent position under the FMLA. *See* 29 C.F.R. § 826.30(a)

19. The FFCRA expanded the FMLA to include employers with under 50 employees.

20. Around noon on March 23, 2020, Gov. Whitmer issued *Executive Order 2020-21* ("EO 2020-21") which explicitly ordered non-essential employees to cease working and that any position which *may* be performed through telecommunication *must* be performed through telecommunication.

21. EO 2020-21 explicitly ordered that "no person or entity shall operate a business or conduct operations that require workers to leave their homes or places of residence except to the extent that those workers are necessary to sustain or protect life or to conduct minimum basic operations." The Order continued stating that it "must be construed broadly to prohibit in-person work that is not necessary to sustain or protect life." Thus, activities that can be performed at home must be performed at home[1].

22. A violation of EO 2020-21 is a misdemeanor.

Defendants' Unlawful Handling of the Pandemic and the Plaintiff

---

[1] EO 2020-21 has been superseded by subsequent Executive Orders modifying some of its individual requirements. However, the applicable passages existed at all times relevant to the facts of this lawsuit and continue to be binding at the time of the filing of this lawsuit. The current form of the Executive Order addressing the "temporary requirement to suspend certain activities the are not necessary to sustain or protext life" is 2020-96

23. On information and belief, the Defendants have established no safety protocols for its employees during the pandemic applicable to the Breakdown Department of which Plaintiff worked. While other departments were allowed to telecommute, Plaintiff was instructed to continuing in-person work. Notably, the setting of the Breakdown Department involved three individuals seated together in a small room.

24. As late as mid-April 2020, the Plaintiff observed coworkers routinely violate social distancing recommendations or requiring masks.

25. The entirety of Plaintiff's job duties can be performed through telecommuting and the parties have the capability to allow the Plaintiff to telecommute. The Plaintiff inquired as to when he would be allowed to telecommute and was flat out told that he would not be allowed to.

26. On or around April 18, 2020, Plaintiff contacted his supervisor Ron Cross ("Cross") to notify Defendants that his girlfriend was running a fever and exhibiting symptoms of Covid-19. Plaintiff informed Defendants that his girlfriend was seeking testing. Defendants instructed Plaintiff to work from home and keep them updated.

27. Shortly after, Plaintiff informed Defendants that he too was now exhibiting symptoms of Covid-19. He was instructed by Defendants to continue working from home.

28. On or around April 21, 2020, Plaintiff received a call from Defendants' Safety Coordinator Michelle Green ("SC Green") advising him that he needs to be tested for Covid-19 and provide a doctor note and the results prior to returning to the workplace.

29. On April 21, 2020, Plaintiff, a veteran, contacted the Aleda E. Lutz VA hospital ("VA Hospital") to obtain a Covid-19 test so that he could return to work.

30. Plaintiff had difficulty obtaining testing for Covid-19. He was initially rejected for testing by the VA Hospital. Additionally, Plaintiff attempted to be tested at a chain pharmacy but was rejected.

31. Plaintiff's girlfriend received negative test results on her Covid-19 test. Plaintiff notified Defendants but was still informed he could not return to work without providing a negative test.

32. Plaintiff contacted the VA Hospital again and informed that he would not be allowed to return to work unless he is tested. The VA Hospital agreed to test him.

33. On April 28, 2020, a Covid-19 test was performed on Plaintiff at St. Mary's hospital. Plaintiff was notified that it would take between 4-5 days for him to receive his test results. Plaintiff informed Defendants that day.

34. The following day, the Plaintiff received separate calls from a call from Cross and SC Green inquiring if he received his results yet despite Plaintiff informing them of the timeline for the results.

35. On May 4, 2020, Plaintiff receives verbal confirmation that he has tested negative for Covid-19 from the VA Hospital. He informs Defendants but is told he need it to be in writing before he can officially return in person.

36. Importantly, Plaintiff is continuing to work from home during this entire time.

37. Plaintiff contacted the VA Hospital numerous times seeking written test results however the overloaded hospital system was unable to provide him results in a timely manner. *(Exhibit A)*

38. On Friday May 8, 2020, Plaintiff is contacted by Cross who requested Plaintiff's work phone and laptop and informed Plaintiff that his shift would be covered.

39. Plaintiff visits Defendants' worksite to drop his work phone but is not let in the building. Plaintiff is notified by Cross that Plaintiff has been terminated for failing to obtain a note saying he can return to work. Cross also sarcastically quips to "have a nice life" to Plaintiff.

40. On or around May 12, 2020, Plaintiff received his written test results from the VA hospital. Plaintiff contacted Defendants' HR Department to inform them but did not receive a response. *(Exhibit B)* HR informed Plaintiff that they were unsure why he was terminated.

41. Defendants never informed Plaintiff of any of his rights pursuant to the FFCRA or the FMLA despite Defendants having adequate notice that Plaintiff's leave potentially, and did, qualify for protections under the expanded FMLA.

42. Defendants interfered with Plaintiff's rights under the FFCRA/FMLA by failing to inform of him of his FMLA rights, failing to designate his leave as being FMLA protected leave, failing to provide him with the appropriate paperwork to take FMLA leave, denying him the ability to designate his leave as FMLA leave, and terminating him for protected leave.

43. Defendant also violated public policy by failing to allow Plaintiff to continue to telecommute as required by Executive Orders related to the declared emergency.

Unpaid Wages for Compensable Time

44. During his employment, Defendant deducted 30 minutes pay from Plaintiff for an unpaid lunch each shift.

45. However, Plaintiff was required to transfer his calls to a cell phone and continue taking calls throughout each lunch.

46. In failing to compensate the Plaintiff for this time, the Defendants violated the Fair Labor Standards Act ("FLSA")

**COUNT I
<u>VIOLATION OF THE FAMILY MEDICAL LEAVE ACT -
INTERFERENCE</u>**

47. All preceding paragraphs are incorporated by reference.

48. Congress enacted the FMLA finding that "there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(a)(4).

49. As a result of the Covid-19 pandemic, Congress expanded the FMLA through the FFCRA to cover Employers with under 50 employees for Covid-19 related purposes.

50. The FFCRA allowed for employees to utilize the protections of the FMLA if the employee requires leave for "a qualifying need related to a public health emergency" and/or is "experiencing COVID-19 symptoms and is seeking a medical diagnosis."

51. That to that end, the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the Act.

52. That at all times material hereto, Defendants were a covered employer as defined by the FMLA, the FFCRA, and the applicable federal regulations.

53. Plaintiff was an eligible employee under the definitional terms of the FMLA.

54. Plaintiff required leave for "a qualifying need related to a public health emergency" and/or is "experiencing COVID-19 symptoms and is seeking a medical diagnosis."

55. Defendants were aware Plaintiff required leave for these reasons.

56. Plaintiff provided Defendants adequate and timely notice of his need to take leave which qualified for the protection of the FMLA.

57. Defendants terminated Plaintiff for requiring leave which was protected under the FMLA.

58. Defendants failed to inform Plaintiff of his rights pursuant to the FMLA or inquire further regarding any additional information regarding Plaintiff's leave or medical condition

59. Defendants have interfered with and denied plaintiff his FMLA rights as described above and herein, including, but not limited to, failing to provide Plaintiff with leave protected by the FMLA to address his need for Covid-19 symptoms and testing and instead discharging Plaintiff from his position, in violation of the FMLA and FFCRA.

60. Defendants' actions were intentional, with deliberate disregard for the rights and sensibilities of the Plaintiff.

61. Defendants' interference with Plaintiff's FMLA leave has directly and proximately caused Plaintiff great damages, including embarrassment, humiliation,

outrage, mental distress and economic loss of large but as of yet undetermined proportions.

## COUNT II
## VIOLATION OF THE FAMILITY MEDICAL LEAVE ACT - RETALIATION

62. All preceding paragraphs are incorporated by reference.

63. Plaintiff took leave which was protected under the FMLA.

64. Defendants retaliated against Plaintiff in violation of the FMLA leave by terminating him for taking leave which qualified as protected leave in violation of the FMLA and FFCRA.

65. Defendants' actions were intentional, with deliberate disregard for the rights and sensibilities of the Plaintiff.

66. There is a causal connection between Plaintiff's protected activity and Defendants' retaliatory actions described above.

67. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT III
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

68. Plaintiff incorporates all preceding paragraphs by reference.

69. *Executive Order 2020-21*, and subsequent superseding Executive Orders, explicitly orders that "no person or entity shall operate a business or conduct operations that require workers to leave their homes or places of residence except to the extent that those workers are necessary to sustain or protect life or to conduct minimum basic operations."

70. EO 2020-21 continues stating, "[i]n-person activities that are not necessary to sustain or protect life must be suspended until normal operations resume."

71. EO 2020-21 also "must be construed broadly to prohibit in-person work that is not necessary to sustain or protect life." Thus, activities that can be performed at home must be performed at home.

72. At all times relevant to this lawsuit, Plaintiff had the ability to perform all of his essential duties through telecommunication.

73. At the time of his termination, Plaintiff was successfully performing all of his duties through telecommunication.

74. Defendants violated public policy by terminating Plaintiff because he was unable to return to in person work for a position which could be successfully performed through telecommunication.

75. As described above, the discharge was in illegal retaliation for Plaintiff's refusal to violate the laws of the State of Michigan.

76. Defendants discharged Plaintiff in illegal retaliation for exercising a right conferred by a well-established legislative enactment.

77. In order to return to work, Defendants would have required Plaintiff to violate the law.

78. Defendants in bad faith, wrongfully, maliciously, and intentionally terminated Plaintiff's employment in violation of the public policy of the State of Michigan, causing her to be humiliated in the process.

79. Defendants' termination of Plaintiff in violation of public policy of the State of Michigan has damaged her by loss of earnings and earning capacity; loss of a bonus; loss of benefits and future benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation.

## COUNT IV
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

80. All preceding paragraphs are incorporated by reference.

81. On or about May 8, 2020 Defendants wrongly terminated Plaintiff in contravention of public policy.

82. Defendants terminated Plaintiff for his refusal to violate the FFCRA which grants employees paid leave if the employee is *"experiencing COVID-19 symptoms and seeking a medical diagnosis."*

83. Plaintiff informed the employer that he was experiencing Covid-19 symptoms and was seeking a medical diagnosis.

84. Defendants terminated Plaintiff simply because they were angry with the amount of time it took for the VA Hospital to return the results.

85. Defendants discharged Plaintiff in illegal retaliation for exercising a right conferred by a well-established legislative enactment.

86. Plaintiff had a right to paid sick leave when exhibiting symptoms of COVID-19 and seeking medical attention to confirm the existence of the virus under the FFCRA.

87. Defendants terminated Plaintiff because of his exercise of this well right.

88. Defendants in bad-faith, wrongfully, maliciously, and intentionally terminated Plaintiff's employment in violation of the public policy of the United States of America, causing him to be humiliated in the process.

89. Defendants' termination of Plaintiff in violation of public policy of the State of Michigan has damaged him by loss of earnings and earning capacity; loss of benefits and future benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation

## COUNT IV
## FAIR LABOR STANDARDS ACT – UNPAID STRAIGHT WAGES

90. All preceding paragraphs are incorporated by reference.

91. At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

92. At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA.

93. At all times relevant and based on the aforementioned allegations, Defendants have had a uniform plan, policy and practice of willfully failing to pay Plaintiff for all hours worked by requiring him to perform "off the clock" work thirty minutes a shift, at the applicable FLSA minimum wage and overtime rates of pay.

94. Defendants' uniform plan, policy and practice of willfully failing to pay Plaintiff at least the required minimum wage rate of $7.25 an hour and, one and one-half times his regular hourly rate of pay for all hours in excess of forty (40) within weekly pay periods during all times relevant, have violated the FLSA.

95. At all times relevant, Defendants had actual and/or constructive knowledge of willfully refusing to pay Plaintiff for all hours worked at least at the applicable FLSA minimum wage and overtime rates of pay.

96. As a result of Defendants' willful failure to compensate Plaintiff the applicable federal minimum wages for all hours worked, they have violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*

97. Defendants' conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

98. Due to Defendants' willful FLSA violations, Plaintiff is entitled and, hereby seeks, to recover from Defendants compensation for the aforementioned unpaid

wages, an additional equal amount as liquidated damages, as well as interest, reasonable attorneys' fees, costs, and disbursements relating to this action for the three-year statutory period under the FLSA, 29 U.S.C. § 216(b).

### REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Grant him all available compensatory damages for economic injury, including back and front pay, extreme mental and emotional distress, humiliation, outrage, economic damages, loss of employment opportunity, harm to reputation, loss of earning capacity, punitive damages, and any other damages available by law;

b. Grant him all available liquidated damages pursuant to the FMLA and FLSA;

c. Grant Plaintiff's reasonable attorney's fees and costs incurred in this litigation; and

d. Grant all such further relief as shall meet equity and good conscience.

Respectfully submitted,

By: /s/ Jack W. Schulz
Jack W. Schulz (P78078)
SCHULZ GOTHAM PLC
*Attorney for Plaintiff*
PO Box 44855
Detroit, MI 48244
(313) 246-3590

DATE: June 2, 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

**JACOB WINTERS,**

        Plaintiff,

vs.

Case No.

Hon.

**STONE TRANSPORT HOLDING INC.,** and
**STONE TRANSPORTATION HOLDING CO.,**
Jointly and severally,

        Defendants.
_____/

Jack W. Schulz (P78078)
SCHULZ GOTHAM PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*
_____/

## **DEMAND FOR TRIAL BY JURY**

Plaintiff Jacob Winters hereby demands for a trial by jury.

                                                        Respectfully submitted,

                                                        By: /s/ Jack W. Schulz
                                                        Jack W. Schulz (P78078)
                                                        SCHULZ GOTHAM PLC
                                                        *Attorney for Plaintiff*
                                                        PO Box 44855
                                                        Detroit, MI 48244
                                                        (313) 246-3590

DATE: June 2, 2020